**IN RE: Laurance Coleman MOSHER, Jr., Debtor.**

**Case No. 17–34430**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Signed 11/09/2017

Entered 11/10/2017

Thomas Black, Attorney at Law, Houston, TX, for Debtor.

David G. Peake, Chapter 13 Trustee, Houston, TX, for Trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING THE UNITED STATES OF AMERICA'S (INTERNAL REVENUE SERVICE) MOTION FOR RELIEF FROM THE STAY REGARDING DISTRICT COURT CASE

Jeff Bohm, United States Bankruptcy Judge

## I. Introduction

Laurance Coleman Mosher, Jr., the debtor in this case (the "Debtor"), filed a voluntary Chapter 13 petition on July 24, 2017. [Doc. No. 1]. He did so in order to stop the United States of America (the "USA") from submitting to U.S. District Judge Keith Ellison an agreed judgment that the Debtor, through his attorney, had signed consenting to foreclosure on his homestead. The agreed judgment would bring to substantial conclusion a certain lawsuit pending in District Judge Ellison's court (the "Tax Suit"). The Tax Suit is styled "*United States of America v. Laurance Coleman Mosher, Jr., et al.,*" Civil Action Number 4:16–cv–00369; the USA had initiated this suit in 2016 because the Debtor refused to pay past due taxes totaling $968,001.16.

In response to the Debtor's filing of his Chapter 13 petition, the USA, on September 21, 2017, filed a motion to lift stay (the "Motion") requesting this Court to lift the automatic stay to allow the Tax Suit to proceed—i.e., to allow the USA to submit the Agreed Judgment to District Judge Ellison. [Doc. No. 32]. On October 3, 2017, the Debtor filed a response opposing the Motion. [Doc. No. 34]. On October 10, 2017, this Court held a hearing on the Motion. Two witnesses—James Ashton (special compliance revenue officer with the IRS) and the Debtor—gave testimony, and this Court admitted several exhibits. After hearing closing arguments, the Court made certain oral findings of fact and conclusions of law on the record, requested briefing from the parties on two issues, and continued the hearing for October 24, 2017 to allow for the Court to give consideration with respect to the ultimate ruling on the Motion.

On October 23, 2017, the parties each filed their briefs regarding the two issues that this Court raised at the October 10 hearing. Because the Court was not able to

review these briefs by the next day—i.e., the continued hearing on the Motion—the Court continued the hearing once again. The Court now issues its ruling in writing rather than holding a hearing to issue its ruling from the bench. These written findings of fact and conclusions of law are made pursuant to Bankruptcy Rules 7052 and 9014.[1] To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such. Finally, to the extent that any of this Court's oral findings of fact and conclusions of law—made at the October 10 hearing or at the November 9 hearing—conflict with the written findings and conclusions set forth herein, the latter shall govern; and to the extent that the written findings and conclusions do not encompass all of the oral findings and conclusions, the latter shall supplement the former. For the reasons set forth below, the Court finds that the Motion should be granted and that the stay should therefore be lifted to allow the USA to submit the agreed judgment to the District Court in the Tax Suit.

## II. Findings of Fact

1. The Debtor is a 77-year-old attorney at law licensed by the State of Texas. The Debtor practiced law at Fulbright & Jaworski from 1967 through 2004. He was a partner at this law firm when he retired in 2004. Presently, although his law license is still active, the Debtor is not practicing law to any appreciable extent. In the Debtor's own words, his "income for legal services performed is sporadic." [Doc. No. 14, p. 61 of 93].

2. The Debtor failed to timely file his tax returns for 1997, 1998, 2000, 2001, and 2002; he finally filed them in October of 2007 and March of 2008. [Oct. 10, 2017 Tr. 10:21–25]. He did not pay the taxes when he filed these returns. [*Id.* at 11:1–7]. The IRS advised him that he owed taxes, but the Debtor did not respond. [*Id.* at 11:8–15]. Therefore, the IRS pursued levy actions. [*Id.*]. In the course of doing so, the IRS discovered that the Debtor had deliberately withdrawn several hundred thousand dollars from his accounts by obtaining multiple cashier's checks. [*Id.* at 11:16–12:20, 62:9–66:9]. Indeed, the Debtor admitted that he took these actions to avoid paying the IRS. [*Id.* at 12:21–13:1]. As a result of the Debtor's obstructionist tactics, the IRS referred his case to the Department of Justice to file suit. [*Id.* at 14:3–9, 23:23–24:5].

3. The Debtor resides at the following address: 407 Greencove Street, Houston, Texas 77024–6734 (the "Property"). [Doc. No. 14, p. 18 of 93]. The Debtor claims the Property as his homestead. [*Id.*].

4. The Property has a present fair market value of approximately $2.3 million. [Oct. 10, 2017 Tr. 30:21–25].

5. According to the Debtor's Schedule D (entitled "Secured Creditors"), the total amount of liens on the Property is $1,068,207.78. [Doc. No. 14, p. 47 of 93].

6. Of this total amount of $1,068,207.78, the Debtor's Schedule D represents that the IRS holds a lien in the amount of $961,621.00.[2] [*Id.* at p. 45 of 93]. The

1. Any reference to a "Rule" is a reference to the Federal Rules of Bankruptcy Procedure. Further, any reference to "the Code" refers to the United States Bankruptcy Code, and reference to any section (i.e., §) refers to a sec-

tion in 11 U.S.C., which is the United States Bankruptcy Code, unless otherwise noted.

2. The IRS has filed a proof of claim setting forth that its secured claim is $969,353.95. [USA's Ex. No. 7]. Therefore, the parties do

remaining liens, which aggregate $106,586.78, are all held by two taxing authorities: the Spring Branch Independent School District and the Harris County Tax Assessor–Collector.

7. Based upon the Debtor's schedules and his testimony at the October 10 hearing, the Court finds that the Property has equity in the approximate amount of $1.3 million.

8. The Debtor is presently married to Gaia Mosher ("Ms. Mosher"). The Debtor and Ms. Mosher are presently engaged in a very acrimonious divorce proceeding pending in the District Court of Harris County, Texas. The suit is styled *Gaia T. Mosher v. Laurance C. Mosher, Jr.*, Cause No. 2015–47158, in the 257th District Court of Harris County, Texas (the "Divorce Suit").

9. On February 11, 2016, the USA initiated the Tax Suit by filing a complaint against the Debtor, Ms. Mosher, the Harris County Tax Assessor–Collector, and the Spring Branch ISD Tax Assessor–Collector. The complaint asserts that the Debtor failed to pay income taxes for the tax years 1997, 1998, 2000, 2001, and 2002, and that he owes the USA the sum of $968,001.16. [USA's Ex. No. 1]. The USA requests District Judge Ellison to enter an order that: (a) declares that the Debtor owes the amount of $968,001.16 to the USA; (b) declares the USA to hold a valid lien in this amount on all property owned by the Debtor, including the Property; and (c) allows the USA to foreclose its lien on the Property. [*Id.*].

10. The Debtor retained counsel to defend him in the Tax Suit, and this attorney filed an answer on April 4, 2016. [USA's Ex. No. 5].

11. The other defendants also retained counsel, each of whom thereafter timely filed answers to the complaint for their respective clients. [*Id.*].

12. On March 16, 2017, the USA and the Debtor entered into a settlement agreement. Under the agreement, the Debtor was to make a payment within 120 days (or by July 14, 2017) in lieu of the USA foreclosing the tax lien on the Property. Additionally, under the agreement, if the Debtor did not make the payment, the parties agreed to the entry of an agreed judgment that the Debtor owed the subject income taxes and that the USA could foreclose its federal tax lien on the Property, sell the Property and apply the sale proceeds against his tax liability. [Doc. No. 32, p. 3 ¶ 9]; [Doc. No. 34, p. 2 ¶ 9 (Debtor's response admitting these allegations) ].

13. Counsel for the USA and counsel for the Debtor signed a two-page agreed judgment that the parties agreed would be submitted to District Judge Ellison for signature if the Debtor did not pay off the lien held by the USA by July 14, 2017 (the "Agreed Judgment"). [USA's Ex. No. 2]. The Agreed Judgment was not filed with the District Court; rather, counsel for the USA has held the judgment with the expectation that it would be submitted to District Judge Ellison if the Debtor failed to make payment within the 120–day period—i.e., by July 14, 2017.

14. On March 21, 2017, the USA, the Debtor, and all other parties filed a joint motion to stay deadlines in the Tax Suit. [USA's Ex. No. 3]. This motion gave District Judge Ellison notice that the USA and the Debtor had entered into a settlement agree-

not materially disagree on the amount of the USA's lien.

ment. Specifically, this motion, in pertinent part, represented the following: On March 16, 2017, the United States and Laurance C. Mosher, Jr. entered into a settlement agreement. Under the agreement, Mr. Mosher will make a payment within 120 days in lieu of the United States foreclosing the tax lien on the property. Accordingly, based on this settlement there is no need to continue discovery and litigate the issues in this matter. However, if Mr. Mosher defaults under the settlement agreement, the United States will move forward to foreclose the tax liens against the property. And if this occurs, discovery and further litigation will be necessary to determine the interest of the parties in the property. Thus, the deadlines for discovery and motions should be stayed.

[USA's Ex. No. 3]. In reliance upon the representations made in the joint motion, District Judge Ellison granted the relief requested and signed an order staying the deadlines in the Tax Suit. [Civ. Act. No. 4:16–cv–00369, Doc. No. 40].

15. In order to pay off the USA's lien, the Debtor attempted to obtain a reverse mortgage on the Property. [Oct. 10, 2017 Tr. 41:13–23]. However, on June 23, 2017, he received notice from the proposed lender (Home-Bridge Financial Services, Inc.) that his reverse mortgage application had been denied. [Id.]; [USA's Ex. No. 8]. The Debtor thereafter failed to pay off the tax lien by the deadline of July 14, 2017 imposed by the settlement agreement.

16. On July 19, 2017, counsel for the Debtor, counsel for the USA, and counsel for all of the other parties in the Tax Suit filed a joint status report that included the following language: The issues between the United States and Laurance C. Mosher have been resolved and the United States anticipates filing an Agreed Judgment Against Laurance C. Mosher shortly. Accordingly, the United States intends to move forward to foreclose the tax liens against the property. However, the interests, if any, of Defendant Gaia Mosher in the property remain to be determined by this Court. Accordingly, the parties request that the matter be reinstated and a scheduling order be entered to allow for a short discovery period and dispositive motion deadline.

[USA's Ex. No. 4].

17. In order to prevent counsel for the USA from submitting the Agreed Judgment to District Judge Ellison—thereby allowing the USA to foreclose its lien on the Property—the Debtor filed a Chapter 13 petition on July 24, 2017. [Oct. 10, 2017 Tr. 35:11–13]. At some point between July 19, 2017 and July 24, 2017, the Debtor decided that, contrary to the terms of the settlement agreement, he wanted to continue residing at the Property, and he therefore now opposes the USA foreclosing its tax lien thereon. [See Oct. 10, 2017 Tr. 50:1–2, 54:12–13].

18. The Debtor's schedules represent that the Debtor has the following debts:

a. $961,621.00 secured claim of the IRS

b. $29,901.26 secured claim of the Harris County Tax Assessor–Collector

c. $9,047.03 secured claim of the Harris County Tax Assessor–Collector

d. $54,563.40 secured claim of Spring Branch ISD Tax Office

e. $12,547.18 secured claim of Spring Branch ISD Tax Office

f. $527.91 secured claim of Spring Branch ISD Tax Office

g. $2,500.00 priority, unsecured claim of J. Thomas Black, P.C.

h. $7,841.00 non-priority, unsecured claim of Capital One

i. $8,187.83 non-priority, unsecured claim of Capital One

j. $23.00 non-priority, unsecured claim of Citicards Cbna

k. $12,741.00 non-priority, unsecured claim of JPMorgan Chase Bank

l. $8,919.00 non-priority, unsecured claim of JPMorgan Chase Bank

[Doc. No. 14, pp. 44–53 of 93].

19. In his Schedule I, the Debtor represents that he has monthly income of $11,531.22, which includes his monthly social security check, his monthly pension payment from Fulbright & Jaworski, income from legal services that he continues to render, and other miscellaneous income. [*Id.* at p. 60 of 93].

20. The Debtor's proposed plan as of the October 10 hearing on the Motion calls for the Debtor to make 36 monthly payments to the Chapter 13 trustee, with the first payment to be in the amount of $1,000.00, the next 34 payments to each be in the amount of $2,200.00, and the final payment to be in the amount of $45,000.00—for an aggregate amount of $120,800.00. [Doc. No. 41]. Additionally, pursuant to paragraph 17 of the plan, as well as the Debtor's testimony, the Debtor also proposes to obtain a reverse mortgage on the Property to satisfy in full all of the taxes owed on the Property. [*Id.* at p. 8 of 11]; [Oct. 10, 2017 Tr. 47:17–25, 54:2–7]. The funds to be received from the reverse mortgage will be paid in a balloon payment in month 36 and will be used to retire all of the Debtor's tax liens. [Oct. 10, 2017 Tr. 48:3–6, 54:8–11]. Thus, the Debtor's plan allows him to keep the Property and continue to reside there and bars the USA from foreclosing its lien on the Property.

### III. Credibility of Witnesses

Two witnesses testified at the October 10 hearing: James Ashton, a special compliance revenue officer with the IRS, and the Debtor. The Court finds that both of these individuals gave forthright answers to the questions posed to them; therefore, the Court finds their testimony to be credible and gives their testimony equal weight.

### IV. Conclusions of Law

**A. Jurisdiction, Venue, and Constitutional Authority to Enter a Final Judgment**

1. Jurisdiction

This Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). Section 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. 28 U.S.C. § 157(a). In the Southern District of Texas, General Order 2012–6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts.

■ This matter is a core proceeding because it is a request to lift the automatic stay, and such a request is expressly defined as a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(G). This dispute is also core under the general "catch-all" language because such a dispute is the type of proceeding that can only arise in the context of a bankruptcy case. *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under § 157

if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."). Prosecution of a motion to lift the automatic stay pursuant to § 362(d) can only occur in a bankruptcy court. There is no state law equivalent of this action.

## 2. Venue

Venue is proper pursuant to 28 U.S.C. § 1408(1).

## 3. Constitutional Authority to Enter a Final Order

■ There is no question that an order lifting the automatic stay is a final order. *Matter of Chunn*, 106 F.3d 1239, 1241 (5th Cir. 1997) (holding that an order granting relief from the automatic stay is a final order). The Supreme Court's decision in *Stern v. Marshall* recognized certain limitations on bankruptcy courts' authority to enter final orders. 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). Therefore, this Court has a duty to question its constitutional authority to enter a final order for any matter brought before it. The Court concludes that the facts in the pending matter are distinguishable from those in *Stern*, and that this Court has the authority to enter a final order on the Motion.

In *Stern*, the debtor filed a counterclaim based solely on state law, and the resolution of this counterclaim did not resolve the validity, or invalidity, of the claim held by the defendant. *Id.* Here, the matter before the Court is not a counterclaim by the Debtor or the estate brought pursuant to state law, but rather is a request from a creditor—the USA—to lift the automatic stay pursuant to § 362(d), which is an express provision of the Bankruptcy Code. Therefore, this Court has the constitution-

al authority to enter a final order in this dispute.

Finally, in the alternative, this Court has the constitutional authority to enter a final order on the Motion because the Debtor and the USA have consented, impliedly if not explicitly, to adjudication of this dispute by this Court. *Wellness Int'l Network, Ltd. v. Sharif,* —— U.S. ——, 135 S.Ct. 1932, 1947, 191 L.Ed.2d 911 (2015) ("Sharif contends that to the extent litigants may validly consent to adjudication by a bankruptcy court, such consent must be expressed. We disagree. Nothing in the Constitution requires that consent to adjudication by a bankruptcy court be expressed. Nor does the relevant statute, 28 U.S.C. § 157, mandate express consent...."). Indeed, the USA filed the Motion, the Debtor filed his response in opposition thereto, and the parties proceeded to adduce testimony and introduce exhibits at the hearing held on October 10, 2017. Moreover, they thereafter filed briefs in support of their respective positions. At no time did either party object—orally or in writing—to this Court's authority to enter a final order on the Motion. If these circumstances do not constitute consent, nothing does.

## B. Applicable Law

There are two avenues available under § 362 for a creditor to obtain a lifting of the stay. First, under § 362(d)(2), a creditor can obtain a lifting of the stay if two elements are satisfied: (1) the property that is the subject of the motion has no equity; and (2) the property is not necessary to an effective reorganization of the debtor. In the matter at bar, the Property unquestionably has substantial equity—approximately $1.3 million. [Finding of Fact No. 7]. Therefore, the USA cannot obtain a lifting of the stay under § 362(d)(2).

▆▆▆ That leaves the other avenue for the USA to pursue. Under § 362(d)(1), a creditor can obtain a lifting of the stay "for cause." The term "cause" is not defined in the Code. Whether cause exists is a fact-intensive inquiry that must be determined on a case-by-case basis. *In re Xenon Anesthesia of Texas, PLLC*, 510 B.R. 106, 112 (Bankr. S.D. Tex. 2014); *In re Bovino*, 496 B.R. 492, 502 (Bankr. N.D. Ill. 2013). "Each case must be viewed on the basis of its own particular facts, and there must be a balancing of the interest of the debtor with the interest of the secured creditor in its collateral." *In re Bovino*, 496 B.R. at 502. "The decision of whether to lift the stay is committed to the discretion of the bankruptcy judge." *In re Syndicom Corp.*, 268 B.R. 26, 43 (Bankr. S.D.N.Y. 2001). Finally, "[t]he burden of proof on a motion to lift the automatic stay is a shifting one: section 362(d)(1) requires an initial showing of cause by the movant; then, with the exception of the debtor's equity in the property (which is not at issue on a motion under section 362(d)(1), like this one), section 362(g) places the burden of proof on the debtor for all other issues." *Id.*

## C. Factors to Consider When Assessing Whether to Lift the Automatic Stay for Cause

One court has stated that:

Factors generally looked to in determining whether to modify the stay for cause include interference with the bankruptcy, good or bad faith of the debtor, injury to the debtor and other creditors if the stay is modified, injury to the movant if the stay is not modified, and the proportionality of the harms from modifying or continuing the stay." None of these factors alone is outcome determinative. The factors in the present case must be weighed within the context of all the relevant circumstances. Courts must weigh the costs and benefits of maintaining the stay.

*In re Bovino*, 496 B.R. at 502 (citations omitted).

Aside from these factors, one of the undersigned judge's former colleagues (now retired) set forth various factors to consider in specifically determining whether to lift the stay to allow litigation against the Debtor to proceed in another forum— which is exactly what the USA is requesting to do here, as it wants to proceed to file the Agreed Judgment in the Tax Suit. [*See* Finding of Fact No. 16]. In *In re Xenon Anesthesia of Texas, PLLC*, Bankruptcy Judge Letitia Paul, citing several prior cases, set forth twelve factors to consider:

1) whether the relief will result in a partial or complete resolution of the issues; 2) lack of any connection with or interference with the bankruptcy case; 3) whether the other proceeding involves Debtor as a fiduciary; 4) whether a specialized tribunal has been established to hear the particular cause of action; 5) whether the debtor's insurer has assumed full responsibility; 6) whether the action primarily involves third parties; 7) whether litigation in the other forum would prejudice the interests of other creditors; 8) whether the judgment claim arising from the other action is subject to equitable subordination; 9) whether movant's success would result in a judicial lien avoidable by the debtor; 10) interests of judicial economy and the expeditious and economical resolution of litigation; 11) whether the proceedings have progressed to the point that parties are ready for trial; and 12) impact of the stay on the parties and the balance of harm.

510 B.R. 106, 112 (Bankr. S.D. Tex. 2014) (citations omitted).

In total, *Bovino* and *Xenon* articulate a universe of seventeen factors to consider in evaluating whether cause exists to lift the stay. This Court believes that some, but not all, of these factors are relevant in the dispute at bar. This Court will therefore address those factors that it believes are relevant in determining whether to lift the automatic stay for cause to allow the USA to proceed forward in the Tax Suit.

### 1. Good or Bad Faith of the Debtor

█ The Debtor's conduct has been less than stellar. First, he is an attorney at law, [Finding of Fact No. 1], who has a duty to follow the law. Yet, he thumbed his nose at the law by failing to timely file numerous tax returns and paying taxes. *Matter of Crayton*, 169 B.R. 243, 245 (Bankr. S.D. Ga. 1994) ("The Internal Revenue Code imposes a duty to file federal income tax returns.") (citing 26 U.S.C. §§ 6001, 6011); *In re Vines*, 200 B.R. 940, 944 (M.D. Fla. 1996) (stating that the debtor's argument that filing a tax return is purely voluntary as "entirely meritless and is clearly contrary to established law" and that "[i]n addition to the legal requirement, the filing of taxes is also a necessary element for full disclosure in the bankruptcy court which is a court of equity."). Second, he was a partner at one of the largest law firms in the country, [Finding of Fact No. 1], so he was doubtless generating substantial income; yet, he chose not to pay taxes for several years while practicing law at this firm, [Finding of Fact No. 2]. Third, when the IRS tried to communicate with him in an effort to negotiate payment of the past due taxes, he gave the IRS the silent treatment. [*Id.*]. Further, when the IRS initiated levy actions to collect the taxes, the Debtor quickly withdrew hundreds of thousands of dollars by obtaining cashier's checks. [*Id.*]. Fifth, once the USA sued him in the Tax Suit, he entered into a settlement agreement promising to pay the past due taxes by July 14, 2017, or, if he failed to do so, to allow the USA to submit the Agreed Judgment to the District Court so that the USA could foreclose its lien on the Property. [Finding of Fact No. 12]. But then, when he failed to pay off the taxes by the deadline, the Debtor reneged on the settlement agreement by filing this Chapter 13 petition and informing this Court that he wants to keep the Property. [Finding of Fact No. 17].

Overall, the Court finds the Debtor's conduct to be shameful and, accordingly, finds him to be in bad faith. But, there is more. By filing his Chapter 13 petition and taking the position that the USA should not be able to foreclose its lien on the Property, the Debtor is undermining the integrity of the judicial process. This Court, now invoking the doctrine of judicial estoppel, will not allow the Debtor to continue to pursue this strategy.

Judicial estoppel should apply when the following elements are present: "(1) the party against whom judicial estoppel is sought has asserted a legal position which is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently." *Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011). Here, in the Tax Suit, the Debtor asserted a specific position in the joint motion to stay deadlines: namely, that he had settled with the USA, one of the terms of which is that he would pay off the tax lien by July 14, 2017, or else allow the USA to foreclose its lien on the Property. [Finding of Fact No. 14]. The Debtor made this representation to District Judge Ellison in order to convince him to abate the deadlines imposed by the District Court in the Tax Suit. [*Id.*]. District Judge Ellison, in reliance upon the representation by the Debtor that he had settled with the USA, approved the motion and signed the order. [*Id.*]. Stated differently, District

Judge Ellison accepted the Debtor's position that he had settled with the USA.

However, when the Debtor failed to pay off the tax lien by the July 14, 2017 deadline, rather than abide by the terms of the settlement agreement, he filed his Chapter 13 petition and proceeded to file a plan proposing to allow him to keep the Property and also opposed the Motion by vigorously arguing that the stay should not be lifted. Thus, the Debtor is now asserting a legal position (i.e., that no cause exists to allow the USA to submit the Agreed Judgment so that it can foreclose on the Property) that is plainly inconsistent with his prior position in the Tax Suit (i.e., that the USA should be allowed to submit the Agreed Judgment if he fails to pay the tax lien by July 14, 2017).

Moreover, the Debtor's filing of his Chapter 13 petition, the filing of his proposed plan allowing him to keep the Property and to continue to reside thereon, and his vigorous opposition to the Motion are not inadvertent acts. He has intentionally undertaken this strategy in a last ditch effort to thwart the USA. This Court will not allow the Debtor to do so. Pursuant to the doctrine of judicial estoppel, this Court finds that the Debtor is estopped from now arguing that the USA should not be allowed to submit the Agreed Judgment to District Judge Ellison. Stated differently, the Debtor's actions have undermined the integrity of the judicial process, which means that the Debtor has acted in bad faith.

For all of the reasons set forth above, this factor strongly favors lifting the automatic stay.

### 2. Injury to the Debtor and Other Creditors if the Stay is Lifted

Lifting the stay to allow the USA to submit the Agreed Judgment to the District Court will presumably lead to a foreclosure sale on the Property. Such an action will not harm the taxing authorities because their liens will be paid prior to the tax lien held by the IRS. Moreover, the Debtor's unsecured creditors, who hold aggregate debts of $40,211.83, [see Finding of Fact No. 18], can be paid from the Debtor's substantial monthly income of $11,531.22, [see Finding of Fact No. 19]. Indeed, that is what the Debtor's plan essentially proposes. [See Finding of Fact No. 20]. Accordingly, these creditors are not harmed if the stay is lifted. The Debtor's wife, Ms. Mosher, will not be harmed, either. She and the Debtor are in divorce proceedings, and she is not residing at the Property, as she moved out after the divorce petition was filed.

So, if there is anyone harmed by lifting of the stay, it will only be the Debtor. However, it is not as if he will be out on the streets without a roof over his head. The Property—which has substantial equity, [Finding of Fact No. 7], will indeed be sold, but in a deliberate, well-advertised sale pursuant to IRS procedures, so it is highly likely that after all tax liens are paid from the sale proceeds, there will be substantial funds remaining that will be remitted to the Debtor. Accordingly, he will be able to purchase a new homestead, although perhaps not as palatial as the Property. Given the Debtor's bad faith conduct, as already described above, the Court finds that any such harm is *de minimis*.

In sum, this factor favors a lifting of the stay.

### 3. Injury to the Movant if the Stay is Not Lifted

The Debtor argues that if the stay is not lifted, the Movant will not be injured because the Property has substantial equity. Hence, so the argument goes, if the Property ever has to be sold, there will be sufficient proceeds to completely retire the USA's lien.

If the Debtor had not entered into the settlement agreement and signed the Agreed Judgment, [*see* Finding of Fact Nos. 12 & 13], his argument would have much merit. However, by signing these documents and also filing the joint motion to stay deadlines, [Finding of Fact Nos. 12, 13, & 14], the Debtor was able to convince the USA to stand down in the Tax Suit for several months to allow him time to obtain a reverse mortgage on the Property in order to retire the tax lien. [Finding of Fact No. 14]. However, he failed to procure a reverse mortgage and instead of abiding by the terms of the settlement agreement and allowing the USA to foreclose on the Property, the Debtor has reneged on the terms and is now using his Chapter 13 case to buy more time to obtain a reverse mortgage. [Finding of Fact Nos. 15 & 17]. The injury to the USA if this Court does not lift the stay, therefore, is that it will not receive the benefit of the bargain it made when it entered into the settlement agreement. This injury is significant for two reasons. First, as already discussed above, the Debtor's actions undermine the integrity of the judicial system. Second, the taxes owed by the Debtor have remained unpaid for approximately twenty years while the Debtor has continued to live the "life of Riley" in what is accurately described as a mansion in the Piney Point neighborhood of Houston, Texas.

For all of these reasons, the Court finds that if it does not lift the stay to allow the USA to submit the Agreed Judgment to District Judge Ellison, then the USA will be substantially injured.

4. Whether the Relief will Result in a Partial or Complete Resolution of the Issues

Lifting the stay to allow the Tax Suit to proceed will definitely result in a partial resolution of the issues in the Tax Suit. Specifically, if the stay is lifted, the USA would be free to submit the Agreed Judgment to District Judge Ellison. His entering the Agreed Judgment would resolve a major issue of the Tax Suit: namely, whether the USA should be allowed to foreclose on the Property. The remaining issue left for resolution would be whether Ms. Mosher has an interest in the Property.

Under these circumstances, this factor weighs in favor of lifting the automatic stay.

5. Whether the Judgment Claim Arising from the Other Action is Subject to Equitable Subordination

The Agreed Judgment to be submitted to District Judge Ellison is not subject in any way to equitable subordination. There is absolutely nothing in the record to indicate that the USA has taken any actions that merit equitable subordination of its tax lien.

Under these circumstances, this factor weighs in favor of lifting the automatic stay.

6. Whether the Movant's Success Would Result in a Judicial Lien Avoidable by the Debtor

The movant here—the USA—holds a valid tax lien on the Property. There is no judicial lien that could be avoidable by the Debtor in this Chapter 13 case.

Under these circumstances, this factor weighs in favor of lifting the automatic stay.

V. Conclusion

In assessing whether cause exists to lift the stay, this Court finds that the factors discussed above strongly weigh in favor of

immediately lifting the automatic stay for cause. Lifting the stay will allow the USA to submit the Agreed Judgment to the District Court, and to take all other actions necessary to protect its lien in the Tax Suit—and, additionally, to bring to closure the major issue in the Tax Suit: namely, allowing the USA to foreclose its tax lien on the Property. Admittedly, the Debtor, who is a 77-year-old man, will lose his homestead, but he has only himself to blame. He has been gaming the system for much too long by first not filing tax returns, and then not paying past due taxes, and then deliberately moving substantial sums of money to avoid the IRS' efforts to collect the taxes, and then negotiating a settlement in the Tax Suit, but then reneging on the terms of this settlement by filing the petition initiating this Chapter 13 case. The Debtor is highly sophisticated individual who has shirked too many of his responsibilities. It is time to draw the line in the dust and bring an end to his gamesmanship. The Court does so by lifting the automatic stay immediately so that the USA can proceed to submit the Agreed Judgment to the District Court in the Tax Suit.

An order consistent with these Findings of Fact and Conclusions of Law is entered simultaneously on the docket herewith.